# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

THE INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA, a foreign
corporation; AMERICAN HOME                     Civil Case Number: 07-CV-15170
ASSURANCE COMPANY, a foreign
corporation; and NATIONAL UNION FIRE           PAUL D. BORMAN
INSURANCE COMPANY OF PITTSBURGH,               UNITED STATES DISTRICT COURT
PA, a foreign corporation,

                  Plaintiffs,

v.

ALTERNATIVE INSURANCE SERVICES,
INC., a Michigan Corporation, and JOHN F.
FLAHERTY, an individual,

                  Defendants.
_____ /

## OPINION AND ORDER
## (1) GRANTING PLAINTIFFS' MOTION FOR JUDGMENT
## AGAINST DEFENDANT JOHN F. FLAHERTY, AND
## (2) APPROVING PLAINTIFFS' BILL OF COSTS

Now before the Court is plaintiffs The Insurance Company of the State of

Pennsylvania's, National Union Fire Insurance Company of Pittsburgh's, and American Home

Assurance Company's (collectively "Plaintiffs") Motion for Judgment as to Defendant John F.

Flaherty ("Flaherty"), Pursuant to Fed. R. Civ. P. 56(a).  A hearing on the matter was held on

April 8, 2009 at 2:00 p.m.  While Defendant Flaherty did not respond to Plaintiffs' Motion, he

did attend the motion hearing.

Also before the Court is Plaintiffs' Bill of Costs (Dkt. No. 37), which the Court ordered

Plaintiffs to submit after it granted a default judgment against defendant Alternative Insurance

Service, Inc. ("AIS").

For the following reasons, the Court GRANTS Plaintiffs' Motion for Judgment against Flaherty and APPROVES Plaintiffs' Bill of Costs, thereby increasing the total to judgment to $1,310,139.000.

## I.    BACKGROUND

### A.    Facts

Plaintiffs are insurance companies incorporated in either Pennsylvania or New York with their principal place of business in New York, New York.  (Compl. ¶¶ 1–3).  Defendant AIS is a Michigan corporation with its principal place of business in Troy, Michigan, and Defendant Flaherty is a resident of Troy, Michigan (*Id*. ¶¶ 4–5).  AIS and Flaherty are collectively referred to as "Defendants."

AIS, a licensed wholesale insurance broker in Michigan, brokered certain insurance policies on Plaintiffs' behalf.  (*Id*. ¶¶ 8, 10–12).  Flaherty serves as the President of AIS and currently owns 100 percent of the corporation.  (*Id*. ¶ 9).  Flaherty, however, is not a licensed broker.  (Def.'s Mot. to Stay Ex. B).

As part of AIS's relationship with Plaintiffs, AIS was supposed to service the policies by collecting the premiums and forwarding them on to Plaintiffs, with AIS receiving a commission based upon the premium amount.   (Compl. ¶¶ 14). Plaintiffs allege that despite receiving payments from the insureds and despite receiving the applicable invoices, Defendants did not remit payment to Plaintiffs for the policies.  (*Id*. ¶ 15).

On October 2, 2007, Defendants allegedly informed Plaintiffs that the premiums, which were due and owing to Plaintiffs, had been paid by the named insurers directly to Defendants and

misappropriated by Defendants.  (*Id*. ¶ 16).

On October 15, 2007, Plaintiffs claim that they informed Plaintiffs that all outstanding premium payments had to be remitted to Plaintiffs on or before 5:00 p.m. on October 19, 2007. (*Id*. ¶ 17).  When Defendants failed to remit those payments to Plaintiffs, this lawsuit ensued.

On November 5, 2007, the Office of Financial and Insurance Regulation ("OFIR") received a written Complaint from American International Group ("AIG") alleging that Flaherty and AIS failed to remit over $459,500.00 in premium payments written through AIG.  OFIR staff met with Flaherty and his attorney on November 13, 2007, where Flaherty admitted to several acts of wrongdoing.  On December 31, 2008, OFIR entered a Consent Order and Stipulation ("Consent Order") regarding AIG's claim against Defendants. The Consent Order concluded that Defendants pay restitution in the amount of $1,329,086.55 to several insurers, including amounts due and owing to Plaintiffs.  (Pls.' Br. Ex. A).

### B.    Procedural History

On December 6, 2007, Plaintiffs filed a five count complaint against Flaherty and AIS, asserting claims of Action to Pierce the Corporate Veil, Breach of Contract, Breach of Fiduciary Duty, Conversion, Unjust Enrichment/Restitution.

Discovery in this case began on March 5, 2008.   After a series of discovery abuses by Defendants and a series of orders by the Court extending discovery, the Defendants filed a Motion to Stay Proceedings Related to Action by the Commissioner of Michigan Office of Financial and Insurance Regulation (Dkt. No. 25) on September 25, 2008.  The motion moved this Court to stay any further proceedings until such time that the Commissioner of OFIR has dismissed the Summary Suspension against Defendants that it issued on September 19, 2008.

On October 14, 2008, Defendants' Counsel, Demorest Law Firm, filed a Motion to Withdraw as counsel for Defendants, citing a breakdown in communication between itself and its clients and other "good cause" as reasons for why its motion should be granted. A hearing on both the Motion to Stay and the Motion to Withdraw was held on November 19, 2008.

Just over a week before the hearing on those matters, on November 11, 2008, Plaintiffs filed a Motion for Default Judgment. Plaintiffs claimed that they were entitled to default judgment because of Defendants' continued abuse of the discovery process in this case, including their failure to abide by several court orders.

At the November 19, 2008 hearing, the Court denied Defendants' Motion to Stay but granted Demorest Law Firm's Motion to Withdraw. The Court ordered Defendant AIS to appear with counsel within thirty days of the November 19, 2008 hearing and scheduled another hearing for December 19, 2008.

Neither of the Defendants appeared with counsel at the December 19, 2008, and the Court heard argument on Plaintiffs' Motion for Default Judgment as to Defendant AIS, only. As a result of AIS failing to proceed with counsel pursuant to the Court's Order,[1] the Court entered default judgment as of December 19, 2008, against Defendant AIS. The Court further awarded Plaintiffs prejudgment interest, attorneys fees, and costs but required the Plaintiffs to submit a bill of costs, which the Plaintiffs submitted on January 21, 2009. The Plaintiffs listed prejudgment interest of $60,488.81, taxable costs of $400.00, and $41,125.50 in attorney fees for a total of $102,014.31, which increased their total demand for relief in this case to

---

[1] In the Sixth Circuit, a corporation cannot appear in federal court except through an attorney. *Doherty v. Am. Motors Corp.*, 728 F.2d 334 (6th Cir. 1984).

4

$1,310,139.00.          On February 5, 2009, Plaintiffs filed the instant motion, seeking judgment against Flaherty by piercing the corporate veil of AIS.

II.  **ANALYSIS**

    A.  **Piercing the Corporate Veil of AIS**

In actions against shareholders of corporations, Michigan courts begin with the initial presumption that the corporate form will be respected. *Seasword v. Hilti*, 449 Mich. 542, 546 (1995) (citations omitted). "This presumption, often called the 'corporate veil' may be pierced only where an otherwise separate corporate existence has been used to 'subvert justice or cause a result that [is] contrary to some overriding public policy.'" *Id.* (quoting *Wells v. Firestone*, 421 Mich. 641, 650 (1984)). "The traditional basis for piercing the corporate veil has been to protect a corporation's creditors where there is a unity of interest of the stockholders and the corporation and where the stockholders have the corporate structure in an attempt to avoid legal obligations." *Foodland Distribs. v. Al-Naimi*, 220 Mich. App. 453, 456 (1996) (citing *Allstate Ins. Co. v. Citizens Ins. Co. of America*, 118 Mich. App. 594, 600 (1982)).

Courts pierce the corporate veil upon a finding of three elements: (1) that the corporate entity was a mere instrumentality of another entity or individual, (2) that the corporate entity was used to commit a fraud or wrong, and (3) that there was an unjust loss or injury to the plaintiff. *Foodland*, 220 Mich. App. at 457 (1996). In making this determination, helpful factors to consider include: the sufficiency of the capitalization of the corporation, the maintenance of separate books, the degree of separation of the corporation's and shareholders' finances, any disregard of corporate formalities, the existence of the corporation as a sham. *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 705 (6th Cir. 1988). Thus,

"[t]he propriety of piercing the corporate veil is highly dependent on the equities of the situation, and the inquiry tends to be intensively fact-driven." *Servo Kinetics, Inc v. Tokyo Precision Instruments Co. Ltd.*, 475 F.3d 783 (6th Cir. 2007) (citing *Kline v. Kline*, 104 Mich. App. 700, 702–03 (1981)).

### 1.     AIS as a Mere Instrumentality of Flaherty

Several of the factors enumerated above weigh strongly in favor of piercing the corporate veil of AIS.  First, Flaherty was the president and sole shareholder of AIS since he purchased the company from Tim Ponta in 1995.  When asked about his initial capital contribution, Flaherty freely admitted that "[i]t was "minimal . . . probably about $1,000, $10,000." (Pl.'s Dep. 29:12–15).  During his tenure as president and shareholder, corporate meetings were not held on a monthly or yearly basis and to the extent that any meetings, which Flaherty refers to these as "shop meetings," were held, no meeting minutes were kept.  (*Id*. 35:8-18).  Flaherty had final decision-making authority at AIS and was the only person with check-writing authority.  Flaherty also initially testified that he was the only person who could make withdrawals from AIS's general or premium trust accounts, but later testified that "[a]t the end Wendy Huntley[2] could transfer money from one account to the other."  (*Id*. 47:5–7).   Flaherty also admits that money was transferred from the premium trust account into the general account.  In addition, Flaherty took out an undisclosed number of personal loans from AIS's general account for an undisclosed amount, with many of them presently left unpaid. (*Id*. 58:1–60:8).  Furthermore, when Flaherty borrowed money from AIS, he deposited the money in his wife's checking

---

[2] According to Flaherty, Ms. Huntley wore many different hats during her eight years at AIS.  Her responsibilities included underwriting, handling accounts payable and accounts receivable, and serving as AIS's company treasurer.  (Pl.'s Dep. 20:15–22).

account because he, "conveniently," does not have a personal bank account. (*Id.* 60:13–16, 61:11–15). Finally, even though Flaherty's wife was not an employee of AIS, Flaherty used AIS monies to lease vehicles in his wife's name, to pay insurance on those vehicles, and to pay for his wife's cell phone. (*Id.* 87:6–89:20).

### 2.    AIS used to Commit a Fraud or Wrong

In both the consent order and Flaherty's deposition, Flaherty admits that he was not a licensed insurance agent in the State of Michigan, that he accepted insurance premiums from insureds, that he did not forward the premiums to Plaintiffs, and that he is responsible for signing all checks (payroll, overhead, and premium to insurers). The OFIR found that Flaherty "used fraudulent, coercive, or dishonest practices or demonstrated incompetence, untrustworthiness, or financial irresponsibility in the conduct of business in the State of Michigan." (Pls.' Br. Ex. A ¶ 21). While the facts are insufficient to find, as a matter of law, that Flaherty engaged in fraud, a specific finding of fraud is not a necessary prerequisite to piercing the corporate veil. *Papo v. Aglo Restaurants*, 149 Mich. App. 285, 302 n.15 (1986). Here, Flaherty's admissions that he transferred monies from AIS's premium trust account into AIS's general account and that he then borrowed money from the general account is sufficient to establish this second veil-piercing element.

### 3.    Unjust Loss or Injury to Plaintiffs

A total of $402,708.10 in unpaid premiums are currently due and owing to Plaintiffs. These monies were paid by several insureds with the apparent belief that AIS would forward the money onto Plaintiffs. This did not occur, and Plaintiffs suffered a loss as a result. Therefore, the Court finds that Plaintiffs have established the third element of a veil-piercing claim—unjust

7

loss or injury.

As a result of the foregoing, the Court pierces the corporate veil of AIS and finds that Flaherty is personally liable for the default judgment Plaintiffs previously obtained against AIS. *See Daymon v. Furman*, No. 249007, 2004 Mich. App. LEXIS 2607 (Mich. Ct. App. Oct. 5, 2004) (affirming trial court's order piercing the corporate veil and holding defendant personally liable for a default judgment the plaintiffs previously obtained against defendant's now-defunct corporation) *appeal denied*, 474 Mich. 920 (2005).   Therefore, the Court need not analyze the rest of Plaintiffs' claims against Flaherty.

**B.      Approval of Plaintiffs' Bill of Costs**

Because the Plaintiffs' request for attorney fees, prejudgment interests, and costs appears reasonable and because neither Defendant objected to the Bill of Costs, the Court grants Plaintiffs' request and increases the judgment against Defendants to $1,310,139.00.

**III.    CONCLUSION**

For the reasons stated, the Court **GRANTS** Plaintiffs' Motion for Judgment as to Defendant John F. Flaherty, Pursuant to Fed. R. Civ. P.56(a) and **APPROVES** Plaintiffs' Bill of Costs, thereby increasing the total judgment against Defendants to $1,310,139.00.

**SO ORDERED.**

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  May 20, 2009

CERTIFICATE OF SERVICE

8

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on May 20, 2009.

S/Denise Goodine
Case Manager